IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LETITIA J.,[1] | ) |
|         Plaintiff, | ) |
| v. | ) Case No. 23-cv-3817-RJD[2] |
| COMMISSIONER of SOCIAL SECURITY, | ) |
|         Defendant. | ) |

## ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB in May 2021, alleging an onset date of March 25, 2021. Tr. 17. After holding an evidentiary hearing on April 18, 2023, ALJ Scot Gulick denied the application. Tr. 26. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final and subject to judicial review. Tr. 1. Plaintiff filed a timely Complaint with this Court.

## Issues Raised by Plaintiff

Plaintiff makes the following arguments:

1. The residual functional capacity ("RFC") is not supported by substantial evidence.

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Order due to privacy concerns. *See* Advisory Committee Notes to Fed. R. Civ. P. 5.2(c).

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties. Doc. 10.

2. The ALJ failed to properly consider the medical opinions.

3. The ALJ failed to properly consider Plaintiff's subjective complaints of pain.

## **Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes and regulations. The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.  A person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) is the claimant doing substantial gainful activity?; (2) does the claimant have a severe medically determinable physical or mental impairment?; (3) does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations?; (4) is the claimant able to perform his former occupation?; and (5) is the claimant able to perform any other work?   20 C.F.R. § 404.1520(a)(4).   An affirmative answer at step 1 or step 4 or step 5 precludes a finding of disability.  *Id*.

This Court determines whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  *Tutweiler v. Kijakazi*, 87 F. 4th 853, 857 (7th Cir. 2023) (internal citations and quotations omitted).  Substantial evidence is defined as "relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  In reviewing for "substantial evidence," the entire administrative record is taken into consideration,

but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2023) (internal citations and quotations omitted).   However, the undersigned does not act as a rubber stamp for the Commissioner.  *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).  There must be a "logical bridge" between the ALJ's conclusion and the evidence.  *Hess v. O'Malley*, 92 F. 4th 671, 676-77 (7th Cir. 2024) (*citing Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020)).

### The Decision of the ALJ

The ALJ followed the required five-step analytical framework.  He determined that Plaintiff had not engaged in substantial gainful activity since March 25, 2021.  Tr. 19.

The ALJ found that Plaintiff has severe impairments of obesity, degenerative disc disease of the lumbar spine, and hypertension.  Tr. 19.  However, he found that Plaintiff does "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  Tr. 20.

The ALJ found that Plaintiff has the residual functional capacity to:

> Perform light work…in that she can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for 6 hours in an 8-hour workday; and she can sit for 6 hours in an 8-hour workday. She can occasionally stoop, crawl, and/or climb ladders, ropes, or scaffolds; and she can frequently kneel, crouch and/or climb ramps and stairs.  She must avoid concentrated exposure to unprotected heights, moving mechanical parts, extreme cold and vibration.

Tr. 20.  Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff is unable to perform past relevant work yet concluded there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  Tr. 23-24.

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in formulating this Order. The following summary of the record is tailored to Plaintiff's arguments.

**1.      Evidentiary Hearing**

Plaintiff testified that she worked for the United States Postal Service from 2015-2021. Tr. 40. She delivered mail and packages to customers in rural areas. Tr. 40. She explained that she cannot currently work a full-time job because of back pain and her legs (particularly her left) give out. Tr. 44, 45. She underwent physical therapy and "it helped to relax some of the pain… but it came back not long after." Tr. 48. She takes pain medication three times a day that makes her tired. Tr. 48. She has high blood pressure because of her back pain. Tr. 45. High blood pressure is problematic because she has also been diagnosed with chronic kidney disease, and her doctor told her that high blood pressure would negatively impact her kidneys. Tr. 48.

Plaintiff rarely drives because she is afraid of her leg "going out." Tr. 51. She can drive to church, but it is only four blocks from her house. Tr. 51. When she is doing housework, she can stand for approximately 15 minutes before she needs to sit down. Tr. 49, 50. Tr. 50. She can sit in a "typical office chair" for approximately 20 minutes. Tr. 50. She can only prepare simple food, like boiling an egg. Tr. 50. Housecleaning is a lengthy process because she must sit and rest. Tr. 51. She cannot change the sheets on her bed or transfer wet/heavy clothing from the washer to the dryer. Tr. 51. A friend lives with her and helps around the house. Tr. 50. She rarely goes into the grocery store; "most of the time someone else goes in and get[s]" the groceries. Tr. 52.

The ALJ elicited the following testimony from Plaintiff regarding outside activities:

| | |
|---|---|
| ALJ: | Do you have any outside activities, things that take you outside of your home on a weekly or a monthly basis other than going to church? |
| Plaintiff: | Well, lately I don't go much places. I have went to the park with my sister and my grandchildren and I sometimes sit in the car or sit on the bench and watch them play or I love fishing.  I have sat on the bank. We have the chairs and I'll sit there and, you know, I'll sit and stand, sit and stand, but I love the water and but other than that, not too many different things. |
| ALJ: | Okay. Have you gone fishing this year yet? |
| Plaintiff: | No, sir. |
| ALJ: | I was going to say, it's been a little chilly.  I didn't know.  Probably wait till maybe June.  All right. |
| Plaintiff: | Yes sir. |

Tr. 52.

Vocational expert Amy Salva testified.  Tr. 54.  The ALJ posed the following hypothetical:

> …an individual (who is 54 years old with an associates degree)…limited to lifting 20 pounds occasionally, 10 pounds frequently.  Carrying 20 pounds occasionally, ten pounds frequently…could sit for 6 hours of an 8-hour day.  Could stand for 6 hours of an 8-hour day.  They could walk for 6 hours of an 8-hour day.  This individual could climb ramps and stairs frequently. Climb ladders, ropes, or scaffolds occasionally.  Could stoop occasionally. Could kneel frequently.  Could crouch frequently. And could crawl occasionally.  This individual would have environmental limitations.  This individual should avoid concentrated exposure to unprotected heights.  Should avoid concentrated exposure to extreme cold and should avoid concentrated exposure to vibration.

Tr. 55.  The vocational expert testified that there are approximately 55,000 light level, unskilled jobs in the national economy for such a hypothetical person.  Tr. 56.

    **2.**    **Agency Records**

In the Agency's Function Report, Plaintiff was asked "if you do any shopping, do you

shop:" and then given options (stores, by phone, by mail, by computer).  Plaintiff selected "in stores."  Tr. 214.  When asked "describe what you shop for", Plaintiff responded "just little things at a time for house or hygiene."  Tr. 214.  When asked "how often do you shop and how long does it take?" Plaintiff wrote "twice a month now 30-45 minutes while in store like Wal-Mart but to go sit in store by shoes to get breaks."  Tr. 214.  Plaintiff reported that she could lift ten pounds above her waist.  Tr. 216.

    3.    **Relevant Medical Records**

Plaintiff's medical records reflect that she sustained a work-related injury in October 2020. Tr. 285.  She started physical therapy two months later. Tr. 284.  The physical therapist noted that "she was in the U[S]PS truck when the packages shifted, and she tried to catch herself by going backwards. As a result, she was unable to gain her balance and ended up falling forward." Tr. 285.  The therapist further noted that Plaintiff reported she could not walk more than 25 feet without increased pain, nor could she stand for more than 15 minutes without increased pain.  Tr. 285.

Plaintiff saw Dr. Peter Mirkin (orthopedic surgery/spinal specialist) and he provided a letter to the Federal Employees' Workers' Compensation Program on January 29, 2021, noting that Plaintiff "has a limited range of motion of her lumbar spine" and a "markedly positive straight leg raise on the left" and "weakness in the left foot dorsiflexor."  Tr. 413.  Dr. Mirkin concluded that she had spondylolisthesis and radicular symptoms.  Tr. 413.  Plaintiff underwent magnetic resonance imaging in February 2021; the radiologist noted "Grade 1 listhesis at L4-L5 probably due to facet arthropathy with resulting lateral recess and foraminal stenosis" and bilateral disc protrusions at L5-S1 "where either L5 root could be affected."  Tr. 278.

In February 2021, Plaintiff contacted her doctor's office to report that she could not work on Wednesdays and needed a letter from her provider stating as such to extend her FMLA leave. Tr. 354. Plaintiff explained that she took one Flexeril to make it through her Monday shift, another Flexeril to make it through her Tuesday shift, but then after physical therapy on Tuesdays she had to take three Flexeril tablets on Wednesday to control her pain and cannot work because of the drowsiness. Tr. 353. Plaintiff's doctor completed a FMLA leave certification, recommending that Plaintiff not work on Wednesdays so that she could continue therapy. Tr. 401.

In September 2021, Dr. Mirkin sent another letter to the Workers' Compensation program, explaining available treatments:

> I have discussed with her options. She can try another shot. I have recommended a decompression from L3 to S1, with fusion of L4-5 and possibly s1. She has spondylolisthesis. She has radicular symptoms. Her symptomatology is a result of her work incident. She was referred to me for treatment of that. We will schedule this if and when we obtain clearance, and when the patient wants to schedule it. If the Department of Labor refuses, I really have nothing else to offer her.

Tr. 428.

In March 2022, Plaintiff saw a physician assistant for a "Medicare annual well visit." The physician assistant noted that Plaintiff reported she could grocery shop and prepare meals with limited or no assistance. Tr. 464-66. Plaintiff underwent another round of physical therapy in January 2023. Tr. 721. The physical therapist noted that she "feels that she is now between 75-80% improved overall since her date of injury." Tr. 722.

### 4. Consultative exam and state agency physician findings

Dr. Adrian Feinerman examined Plaintiff in October 2021 for the Bureau of Disability

Determination Services.  Tr. 439.  He provided the following summary:

> This 52-year old female identifies low back pain as the problem that most interferes with her ability to work.  She has had low back pain since 10/18/2020.  She was diagnosed with degenerative disc disease with no surgery.  She has had hypertension since the age of 14 years old with no end organ damage.  Upon physical examination today, this patient is able to sit, stand, walk, hear, and speak normally.  She is able to lift, carry, and handle objects without difficulty.

Tr. 444.  The ALJ stated that "these opinions are so vague as to be of little assistance" but Dr. Feinerman "supports his opinions with his detailed report of his examination findings, which the undersigned finds persuasive."  Tr. 23.

Dr. Karen Vilcinskas (state agency physician with a specialty in family medicine) opined that Plaintiff was limited to standing or walking for approximately six hours in an eight-hour work day, sitting for six hours in an eight hour work day.  Tr. 63.  Dr. Vilcinskas further opined that Plaintiff could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds.  Tr. 63.  Dr. Vilcinskas cited Dr. Feinerman's October 2021 exam as the basis for this conclusion, noting that Plaintiff's straight leg raise tests were negative and she could get on/off the exam table, tandem walk, stand on her toes, and stand on her heels.  Tr. 63.  At the reconsideration level, Dr. Rohini Mendonca echoed Dr. Vilcinskas' findings regarding Plaintiff's ability to occasionally lift or carry 20 pounds, frequently lift or carry ten pounds, stand or walk for six hours in an eight hour work day, and sit for six hours in an eight hour work day.  Tr. 76, 77.  Dr. Mendonca likewise relied on Dr. Feinerman's assessment to form these opinions.  Tr. 79.

## Analysis

Plaintiff argues that there are three bases for the Court to remand this case: 1) the ALJ failed to properly evaluate residual functional capacity; 2) the ALJ failed to properly evaluate

opinion evidence; and 3) the ALJ failed to properly consider Plaintiff's subjective complaints of pain.   The Court is not persuaded by any of these arguments.

**Residual Functional Capacity**

Plaintiff's argument in her brief on this issue merely consists of a generic recitation of case law regarding RFC.   She concludes that "the ALJ's analysis is not supported by substantial evidence."   Nonetheless, the Court considers the ALJ's explanation for his determination that Plaintiff can perform light work:

> ….the record reflects some inconsistencies in this case….she reports the ability to drive and attend church as well as shop in stores, albeit for only small items….[there is] also [] history reported in medical evidence of record indicating the claimant could do housework; shop for groceries and prepare meals with limited or no assistance during the period under consideration…and the claimant has reported 80% improvement in her lumbar symptoms.  She also responded to questions about whether she was in contact with an attorney related to pain in the negative, whereas she is represented by an attorney in pursuing this disability application based on pain. In addition, the claimant testified it would probably be June before she could go fishing this year *due to the chilly weather*.  In short, despite her injury and ongoing symptoms, the claimant's limitations are not of disability severity.

Tr. 22 (emphasis in the original).   Some of these statements are debatable.   For example, Plaintiff's testimony that she could drive four blocks to church and then attend church does not seem to contradict her testimony that she can neither sit nor stand for more than 15 minutes at a time.   The undersigned also questions the ALJ's emphasizing that "the claimant testified it would probably be June before she could go fishing this year *due to the chilly weather*" (emphasis in the original).   Plaintiff did not say that she was waiting for warmer weather to go fishing-the ALJ did. Perhaps as these statements were made in the hearing it seemed to the ALJ that Plaintiff was agreeing with him, but even if Plaintiff was waiting for warmer weather to go "fishing", she

described the activity as "we have the chairs and I'll sit there and, you know, I'll sit and stand, sit and stand." Nothing about Plaintiff's "fishing" testimony reflects that she can sit or stand for more than 15 minutes. Similarly, the Court sees little probative value in one medical visit in which Plaintiff apparently denied "being in contact with a lawyer because of pain or injury." Tr. 722.

Regardless, it is not the undersigned's role to reweigh the evidence. This Court must affirm the ALJ's decision if it is supported by substantial evidence and "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Aside from the ALJ's questionable characterizations of certain evidence, he also referenced a 2023 physical therapy record in which Plaintiff reported that her symptoms had improved 75-80% since the 2020 injury to her back, as well as a report from her primary care provider in 2022 that stated she could perform housework or grocery shop with little to no assistance. A reasonable mind could accept this evidence as adequate support for the ALJ's finding that Plaintiff can perform light work, and therefore the RFC is not a basis for remand.

**Medical Opinions**

The ALJ was not required to "defer or give any specific evidentiary weight…to any medical opinion(s)." 20 C.F.R. §1520c(a). The ALJ evaluates medical opinions by considering whether they are supported by relevant objective medical evidence and whether the opinions are consistent with evidence from other medical and nonmedical sources. *Id*. at §1520c(c). The ALJ *is* required to articulate the supportability and consistency of those opinions in the determination. *Id*. at §1520c(c).

Plaintiff faults the ALJ for discounting the opinions of Plaintiff's treating physicians. The ALJ noted that opinions by Dr. Smith and Dr. Mirkin addressed temporary issues. Tr. 23. For example, Dr. Smith recommended that Plaintiff not work on Wednesdays while she was completing physical therapy in January 2021 because the physical therapy session on Tuesdays caused her significant pain on Wednesdays. Plaintiff then faults the ALJ for not considering later medical records yet fails to point to any newer medical records in which Plaintiff's treating providers recommended similar restrictions. The Court notes that Plaintiff's most recent medical records from Washington University Pain Center reflect that in February 2023, Plaintiff reported "that her pain is much better and does not have any substantial pain at baseline unless she is exerting herself with rotational movements, extension…she continues to attempt aquatherapy and additional home exercises…with moderate benefit. She is grateful for the progress she has made. Her pain somewhat interferes with ADLs." Tr. 545.

Plaintiff contends that the ALJ failed to analyze the supportability and credibility of the state agency physicians' opinions. The ALJ found that opinions by Drs. Vilcinskas and Mendonca (state agency physicians) were generally persuasive, noting that the physicians cited "substantial evidence in support of" their findings. Both Drs. Vilcinskas and Mendonca cited Dr. Feinerman's physical exam, as well as Plaintiff's medical records, in finding that Plaintiff was limited to occasionally lifting or carrying 20 pounds, and frequently carrying or lifting 10 pounds. Tr. 63, 76, 79. The ALJ also stated that their opinions were consistent with the record in its entirety; his analysis of their opinions immediately followed his explanation of how the record supported his finding that Plaintiff could perform light work. As explained above, some parts of the ALJ's explanation are questionable but the conclusion reached by the ALJ and Drs. Vilcinskas

and Mendonca-that Plaintiff could perform light work-is consistent with Plaintiff's most recent medical records (e.g., the physical therapy record in 2023 in which Plaintiff purportedly stated she had improved 75-80% since the initial back injury). Plaintiff's arguments to the contrary are simply invitations for the Court to reweigh the evidence, which is not a proper basis for remand.

**Subjective complaints of pain**

For this argument, Plaintiff points to portions of the ALJ's analysis that the Court has previously discussed in this Order as questionable: that Plaintiff can drive to and attend church (and whether that means she can sit for more than 15 minutes), whether her description of "fishing" contradicts other portions of her testimony, and the relevance/weight to be given to her statement that she was not in contact with an attorney regarding her pain. As previously stated, the ALJ points to other evidence in the record that forms a logical bridge from the ALJ's analysis to the RFC. Accordingly, remand is not appropriate.

## Conclusion

After careful review of the record as a whole, the Commissioner's final decision denying Plaintiff's application for disability insurance benefits is AFFIRMED.

The Clerk of Court is directed to enter judgment in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED: March 27, 2025**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**